AMERICAN BUILDING SERVICES, INC., Appellee,

v.

COHEN, Appellant.

[Cite as *Am. Bldg. Serv., Inc. v. Cohen* (1992), 78 Ohio App.3d 29.]

Court of Appeals of Ohio,
Butler County.

No. CA91–08–145.

Decided Aug. 3, 1992.

30

*Irvin J. Zipperstein,* for appellee.

*Jack F. Grove,* for appellant.

WILLIAM W. YOUNG, Judge.

This case is before us on the appeal of defendant-appellant, Steven M. Cohen, from a judgment of the Butler County Court of Common Pleas enjoining appellant from violating the terms of his employment agreement with plaintiff-appellee, American Building Services, Inc. ("ABS"), by continuing to work for one of appellee's competitors, International Service System, Inc. ("ISS").

Appellee is a corporation engaged primarily in commercial janitorial cleaning. Appellee conducts its businesses in the cities of Troy, Cincinnati, Dayton and Columbus and the areas surrounding those cities. In July 1990, appellant was hired by appellee as a manager of appellee's Fiber Clean Division, a new division within appellee's corporation. Prior to joining appellee's business, appellant was employed by Key Service, a cleaning service that held Sears' nationwide contract for cleaning carpet and upholstery. At the time he was laid off by Key Service in 1988, appellant had become a regional manager and was responsible for the sales and management of the Key Service operation throughout the states of Ohio, Kentucky and Indiana.

The purpose of appellee's Fiber Clean Division was to expand appellee's cleaning services to include the cleaning of carpets, draperies and upholstery in commercial establishments. Appellant was hired to sell janitorial services to appellee's existing accounts and expand the new Fiber Clean Division.

When he was hired, appellant executed an employment agreement which contained restrictions covering employment and post-employment periods.[1] The dispute in the instant action arose from the restrictions imposed by the contract in the post-employment period. The relevant portion of the agreement contains the following provisions:

"A. For six months, the employee will not accept employment with a customer or prospective customer.

"B. For one year, employee shall not supervise, manage, hire, or otherwise induce any employees of employer to leave the employment of employer.

"C. For two years after termination, employee shall not be employed by any business which directly or indirectly competes with the employer in any county in which the employer has any customer or prospective customers.

---

1. There is a dispute as to when the contract was signed. Appellee contends that appellant knew about the agreement and signed it before accepting the position. Appellant, though, asserts that he became aware of the employment agreement only after he began his employment with Fiber Clean. Appellant further avers that he did in fact read, understand and sign the agreement, but signed it only because he had left his other employment and had no other alternative.

Nor will employee divert or assist anyone else in diverting any business or prospective customer away from employer.

"D. For three years, the employee shall not disclose any sales information of prospective accounts, any sales strategy, operations, information or techniques on current accounts."

Appellee was not satisfied with appellant's progress as manager of the Fiber Clean Division. Thus, on February 1, 1991, just seven months after he began his employment with appellee, appellant agreed to leave his managerial position with Fiber Clean. During the short period of time that appellant was employed with Fiber Clean, he was privy to customer lists, computer printouts regarding customers, pricing information, profit and loss statements, labor rate information and profit margins.

Appellant subsequently found employment with ISS. According to the evidence presented at trial, ISS is the largest commercial cleaning company in the United States and is a direct competitor of appellee in the area of providing janitorial services to commercial clients. Appellant was hired as a regional sales director for ISS. As a regional sales director for the southwest portion of Ohio, one of appellant's responsibilities is to bid for and obtain contracts for ISS's janitorial service business.

Appellee filed its complaint for an injunction after ISS was successful in outbidding appellee on two separate janitorial service contracts in the Cincinnati area. Appellee believed that the loss of the contracts was due to inside information. More specifically, appellee argued that the losses were the direct result of appellant's having obtained information about appellee's janitorial service operation while employed in the Fiber Clean Division.

On July 15, 1991, a hearing on appellee's motion to enjoin appellant from divulging trade secrets and from working for a competitor was held before the Butler County Court of Common Pleas.[2] On July 26, 1991, the trial court held in favor of appellee's complaint finding that the employment contract was enforceable. The court therefore enjoined appellant from divulging to anyone any information obtained from his employment with Fiber Clean and further ordered appellant to cease and desist his employment with ISS in the janitorial/commercial cleaning business in the Ohio counties in which appellee conducts its business. Appellant now appeals and assigns the following error for review:

"The trial court erred in shaping injunctive relief restraining competitive employment by failing to recognize the undue hardship on the employee."

---

2. Apparently, the issue of damages was not before the court at the July 15, 1991 hearing, nor was this issue resolved at the time of this appeal.

Appellant brings this appeal, not to reverse the trial court's judgment in all respects, but to modify the judgment in accordance with the rule of reasonableness. It is appellant's position that the restraint fashioned by the trial court is overly broad and imposes an unreasonable hardship upon him and his family. He therefore asks this court to modify the employment agreement in order to permit him to continue to work for his present employer.

In *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544, the Ohio Supreme Court set forth a rule of reasonableness with respect to the enforcement of noncompetition agreements between employees and their employer. The court held that a noncompetition agreement is reasonable if (1) it is no greater than is required for the protection of the employer; (2) it does not impose undue hardship on the employee; and (3) it is not injurious to the public. *Id.* at paragraph two of the syllabus. However, a covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate interests. *Id.* at 25–26, 71 O.O.2d at 14, 325 N.E.2d at 547.

The sole question before this court is whether appellee's restriction with respect to appellant's employment with a competitor meets the reasonableness test found in *Raimonde*.[3] Our review of the record leads us to conclude that certain restraints and the resultant hardship on appellant do exceed that which is reasonable to protect appellee's legitimate business interests.

Geographically, the covenant prohibits appellant from working for any business which directly or indirectly competes with appellee in any county in which appellee has any customer or prospective customer and from accepting employment with a prospective customer. Such a geographic limitation is too unreasonable, since the term "prospective customer" is broad and overly inclusive. Moreover, when the relevant facts are taken into consideration in the instant action, we find that the two-year restriction prohibiting appellant from accepting employment with a competitor which directly or indirectly competes with appellee in any county in which appellee has a customer unduly restricts appellant's potential employment opportunities.

In *Raimonde*, the Supreme Court acknowledged that courts may fashion a contract that is reasonable as between the parties and in accord with their intentions. Before doing so, the court is required to examine all the factors relevant to the parties' situation. Among the factors properly considered are:

---

3. Appellant does not contest any restrictions pertaining to the disclosing of any sales information on prospective accounts, any sales strategy, operations, customers lists or any other trade secrets that appellant may have learned while working for Fiber Clean.

" 'The absence or presence of limitations as to time and space, * * * whether the employee represents the sole contract with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.' " *Id.*, 42 Ohio St.2d at 25, 71 O.O.2d at 14, 325 N.E.2d at 547, quoting *Extine v. Williamson Midwest* (1964), 176 Ohio St. 403, 406, 27 O.O.2d 375, 376–377, 200 N.E.2d 297, 299.

Keeping the foregoing factors in mind, and given the circumstances of this case, we find that the portion of the covenant between the parties which prohibits appellant from becoming employed by any business which directly competes with appellee for two years after termination is unreasonable and not necessary to protect appellee's legitimate business interests. First, appellant had vast experience in the service and cleaning industry before starting his employment with Fiber Clean. Appellant worked for Key Service, which held the Sears' nationwide contract for cleaning carpet and upholstery. Appellant worked for Key Service for approximately ten years and was promoted to regional manager where he was responsible for the sales and management of its cleaning service. After being laid off by Key Service in 1988, appellant spent several months out of work until finding employment with appellee's Fiber Clean Division. After only seven months, appellant was asked to leave Fiber Clean. Appellant subsequently found a job with ISS, a competitor of Fiber Clean in the cleaning and janitorial industry. Although a competitor, ISS offered services in several other areas including environmental analysis, engineering and lighting maintenance, acoustics and building material care. The evidence further indicates that Fiber Clean experienced forty percent growth after appellant left his position. Moreover, there is no evidence that ISS or appellant made an effort to solicit any Fiber Clean account.

Considering the fact that appellant spent only seven months with Fiber Clean and that he had obtained much of his experience and skill as a salesperson and manager while working for Key Service, we hold that the competition restrictions are unreasonable and will create an undue hardship on appellant. The covenant, as written, seeks to stifle appellant's inherent skill and experience as a salesman for the cleaning service industry, bars his ability to support his family, and suppresses his talent in the cleaning industry

even though his talent and knowledge about the industry were not actually developed during the short period of time that he was employed with Fiber Clean.

We therefore modify the restriction so as to allow appellant to continue his employment with ISS and otherwise employ himself in the cleaning industry. Our modification, however, does not intrude upon appellee's ability to restrict appellant from disclosing, *inter alia*, customer lists, sales information or techniques on current accounts to any person or entity. Appellee, indeed, has a legitimate commercial interest in protecting this information.

We remand this case to the trial court on the sole issue of damages. Upon remand, the trial court should determine what damages, if any, appellant has caused appellee by disregarding the covenant not to compete, as modified by this court.

*Judgment accordingly.*

KOEHLER, P.J., and WALSH, J., concur.